UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CERTAIN UNDERWRITERS AT LLOYDS,
SUBSCRIBING TO POLICY NO.  M3411474
AND POLICY NO.  M5061026,

        Plaintiff/Counterdefendant,

v.                             CASE NO. 8:11-CV-63-T-17TGW

NOA MARINE, INC., ETC.,

        Defendant, and

TU TU MUCH, LLC, and
WILLIAM MAHAFFEY,

        Defendants/Counterplaintiffs.

_____/

ORDER

This cause is before the Court on:

Dkt. 27    Motion for Summary Judgment
Dkt. 28    Statement of Undisputed Facts
Dkt. 31    Response
Dkt. 32    Response
Dkt. 39    Reply

The Complaint in this case includes an action for declaratory relief under 28
U.S.C. Sec. 2201, and within the admiralty and maritime jurisdiction of the United
States District Court concerning  policies of Marine General Liability issued by Plaintiff
Certain Underwriters at Lloyds ("Lloyds").   Policy No. M3411474 provided ship
repairer's liability coverage to Defendant NOA Marine, Inc. from 3/29/2005 through
3/28/2006.  Policy No. M5061026 provided ship repairer's liability coverage to
Defendant NOA Marine, Inc. from 3/29/2006 through 3/28/2007.   Plaintiff Lloyds seeks
a declaratory judgment declaring and adjudging the amount of Defendant Mahaffey's

Case No. 8:11-CV-63-T-17TGW

claim against Defendant NOA Marine, Inc. which falls within the scope of the subject policies of insurance.

This case is an action for declaratory judgment to determine the extent   of Plaintiff's duty to indemnify its insured, NOA Marine, Inc.   There is a coverage dispute as to how much coverage the applicable policies of Marine General Liability insurance provide for the arbitration award entered and confirmed in favor of Defendants William Mahaffey and Tu Tu Much, LLC, and against Plaintiff's insured, NOA Marine, Inc. Plaintiff stipulates that the applicable policies provide coverage under the Ship Repairer's Liability Endorsement for a partial amount ($8,691.29 - $8,891.29) for "property damage" to electrical components and appliances aboard the M/V Tu Tu Much resulting from faulty workmanship by NOA Marine, Inc. (Dkt. 31, p. 11).  No claim for bodily injury is involved in this dispute.

Defendants Tu Tu Much, LLC and William Mahaffey filed their Answer, Affirmative Defenses and Counterclaim on 3/7/2011 (Dkt. 7).

Defendant Tu Tu Much, LLC was the owner of a motor yacht which underwent certain repairs and refurbishments at Defendant NOA Marine, Inc. in July, 2005 and April, 2007.   Defendant Mahaffey contracted with Defendant NOA Marine, Inc. for the repairs and refurbishments.   A dispute arose as to the quality of the repairs, which resulted in a claim by Defendant NOA Marine, Inc. against Defendants Mahaffey and M/V Tu Tu Much, and a counterclaim by Defendant Tu Tu Much, LLC against Defendant NOA Marine, Inc. in an arbitration proceeding, "NOA Marine v. William Mahaffey and M/V Tu Tu Much."

An arbitration award was entered awarding Defendant Mahaffey $140,221.18 against Defendant NOA Marine, Inc. (Dkt. 1-4).    With interest and costs, the total award to Mahaffey/Tu Tu Much was $165,345.87.  After subtracting the total award to

2

Case No. 8:11-CV-63-T-17TGW

Defendant NOA Marine of  $30,229.22, the net award to Defendants Mahaffey/Tu Tu Much was $135,116.65.

I.  Statement of Facts

1.   On 7/11/2005, William Mahaffey, on behalf of Defendant Tu Tu Much, LLC, registered owner of the Vessel, entered into a contract with NOA Marine, Inc. for NOA Marine, Inc. to perform repair work, as specified in the contract (Dkt. 7-1, pp. 4-5).

2.  The owner authorized NOA Marine, Inc. (contractor) and subcontractors to perform repair work, and granted NOA Marine, Inc. and its employees permission to operate the Vessel, engines and equipment for the purpose of testing, repairs and inspection.

3.   The contract further provided:

II.  INSURANCE

The owner certified that the vessel described on the reverse side of this contract is insured with Marine Hull Insurance and Marine Protection and Indemnity Insurance.

The Owner, his heirs and assigns hereby release and agree to indemnify and hold harmless Contractor, its officers, its employees and its subcontractors from any and all liability for personal injury, loss of life and property damage to himself, family, employees, invitees and agents arising out of or in connection with the condition or use of the described vessel, motor, and accessories, or the use of premises; and the Owner himself, his heirs and assigns, releases Contractor, its officers, its employees, its subcontractors from any all liability for loss or damage to the vessel ..., motor and equipment or contents thereof due to theft, fire, collision, windstorm, rain, hurricane or other casualty loss.  The Owner himself, his heirs and assigns, agrees to indemnify and hold harmless Contractor, officers, employees, subcontractors for any negligent or

3

Case No. 8:11-CV-63-T-17TGW

intentional act by any other person.  Contractor is not considered under this contract to be an insurer of the Owner's property and it is the responsibility of Owner to secure such insurance coverage as desired.

4.  The contract further provided that any dispute which arose between the parties to the contract would be referred arbitration:

IV.  ARBITRATION CLAUSE

1.  Should any dispute arise between the parties to this Contract, the matter in dispute shall be referred to an arbitrator agreed upon by the parties or, if they are unable to agree on a single arbitrator, then to three arbitrators, one to be appointed by each of the parties hereto, and the third by the two chosen.  All arbitration proceedings, including the rendering of the award, shall take place in the City of Tampa, Florida and under the Rules of the U.S. Arbitration Act, 9 U.S.C.A. Secs. 1-14. Decisions of the Arbitral Tribunal shall be in accordance with the general maritime law of the United States applicable to this Contract.  The Arbitral Tribunal shall state the reasons for its award.  The award of the tribunal shall be final.  Judgment upon such award may be entered by the prevailing party in any court having jurisdiction, and either party may apply to any such court for judicial acceptance of the award and an order of enforcement.

2.  No arbitration proceedings hereunder shall be binding upon any party other than the parties to this Contract.  The provisions of this section shall be without prejudice to any other rights or remedies of the parties set forth elsewhere in this Contract.

5.  The contract further provided:

XI.  CLAIMS

No claims for damages for negligence or otherwise or for defective workmanship or materials not warranted by the Manufacturer shall be valid and Contractor shall be discharged from all liabilities therefore unless claim is made to Contractor in writing within thirty (30) days after delivery of the vessel or completion of the work, whichever occurs first.

6.  Defendant NOA Marine, Inc. submitted a Statement of Claim in the amount of

4

Case No. 8:11-CV-63-T-17TGW

$27,095.58 to arbitration.

7.  Respondents William Mahaffey and Tu Tu Much, LLC submitted an Answer and Counterclaim in response to Defendant NOA's Statement of Claim, denying NOA's claims for damages, interest and attorney's fees, and seeking judgment in excess of $400,000 for breach of the Services/Storage Contract.  Respondents alleged that NOA Marine contracted with Respondents to perform a "comprehensive refit" on the vessel, and acknowledged that all claims are governed by the terms and conditions of the Services/Storage Contract entered into on 7/11/2005.  Respondents Mahaffey and Tu Tu Much, LLC alleged that Defendant NOA Marine failed to repair the vessel in a workmanlike and acceptable manner, and failed to complete the work that they bargained for, and that NOA promised.  Respondents alleged that, in addition to breaching the contract, NOA Marine impliedly warranted that the repairs to the vessel would be conducted in a workmanlike manner.  Respondents further alleged that, contrary to and in breach of the agreement between the parties, and in breach of warranty, NOA Marine failed to repair Tu Tu Much as promised, and attached a list of repair items resulting from NOA Marine's breach of contract and warranty.

In their Counterclaim, Respondents alleged:

As a result of NOA Marine's breaches, the owners of Tu Tu Much incurred or will incur: 1) expenses for repair, reconstruction, replacement and completion of the work; 2) losses due to the loss of use of the vessel; 3) costs contrary to and in excess of the contract amount; 4) expenses for marine surveyors and experts; and 5) incidental and consequential damages.  In addition, the owners of M/V Tu Tu Much were required to hire an attorney and incur substantial costs in this action.

Respondents demand judgment against NOA Marine in excess of $400,000 for damages, interest, taxable costs, attorney's fees, and any other relief allowed by law.

5

Case No. 8:11-CV-63-T-17TGW

    8.   After arbitration in January, 2008 and in April, 2009, an arbitration award
was entered.   In the arbitration award of 7/28/2009, the arbitrators included the
following statements to explain the award:

> 1.  A party who contracts to provide products or services and then
> delegates providing some of those products or services to a subcontractor
> cannot escape liability to its contracting counterpart by virtue of the
> failings of the subcontractor.
>
> 2.  An injured (sic) has a duty to mitigate its damages;
>
> 3.  It is not enough to show failure of a product or service after a passage
> of time to prove that the product or service was deficient when supplied.

Within the award, the arbitrators stated that all claims of the parties were considered,
and those not discussed were considered but not allowed.

    9.   In the arbitration award, the claim of Defendant NOA Marine, Inc. was
awarded the claimed amount, $27,095.58 in full.

    10.   In the arbitration award, "Respondent" includes William Mahaffey and Tu
Tu Much, LLC; the Counterclaim of Defendant William Mahaffey and Tu Tu Much, LLC
was awarded as follows:

> Paint:
>
> Respondent was awarded $25,000.  The alleged overcharge of
> $19,355.35 was denied based on insufficient evidence.
>
> "The evidence established that the new paint applied by NOA was
> damaged by over spray and buffing while the vessel was at NOA and that
> these conditions required repair.  The evidence also establishes that NOA
> did not properly fill and prepare holes for painting where it removed
> hardware prior to repainting.  However, Respondent's claims that the
> entire vessel required repainting. (sic)  The estimates for such repainting
> are deemed to be excessive.  Considering the NOA charges for painting

Case No. 8:11-CV-63-T-17TGW

the portions of the vessel pursuant to its contract and the estimate for repainting the entire vessel, it is determined that the reasonable cost of repainting the portions of the vessel necessitated by NOA's deficiencies is $25,000....."

Electrical

Respondent was awarded $35,447.93.

"The evidence supports Respondent's claim on this item but not as to each element of damage claimed. In summary form the evidence on this item is that Cornett, a subcontractor to NOA, attached certain wires to a new S-2 switch furnished by NOA pursuant to its contract. Loose wires were later discovered, which, according to the evidence, probably caused voltage spikes which damaged various components and appliances in the vessel. Cornett testified that he attached and tightened the wires the best he could but was concerned about their integrity because of the excessive movement of the large S-2 switch. He informed NOA of his concerns, and NOA agreed to address the problem. Apparently, NOA secured the switch/wires with zip ties, which Cornett testified would not have been his solution to the problem."

Flybridge Hatch and Seating

Respondent was awarded $11,856.00 for the "damage amount." No other basis is stated.

Interior Carpentry

Respondent was awarded $4035.00 for the "damage amount." No other basis is stated.

Miscellaneous Carpentry

Respondent was awarded $8683.43 for the "damage amount." No other basis is stated.

Flybridge Windshield and Salon Windows

Respondent was awarded damages of $5732.00 for the flybridge windshield.

Case No. 8:11-CV-63-T-17TGW

"NOA contracted to remove, coat the frames and re-install four windows in the aft salon and charged $20,269 for this work.  NOA also contracted to replace the flybridge windshield and charged $4282 for this.

The evidence showed that the frames on the windows corroded and blistered within one year of NOA's work.  While this may well be unexpected, There was no evidence, expert or otherwise, concerning the cause of these problems.  Accordingly, no damages are awarded for the salon windows.

The flybridge windshield, however, was a new installation by NOA; it leaked and required re-sealing at Merritt's shortly leaving NOA (sic).  This attempted repair was unsuccessful, and replacement was recommended at Winter Harbor.  While Winter Harbor's quote for replacement of the windshield appears excessive compared to NOA's charge for the same work, Respondent is awarded damages of $5732 for the flybridge windshield."

"All other claims were considered but no additional damages are deemed supported by the evidence and law."

    11.  In the arbitration award of 10/13/2009, the arbitrators awarded the following post-award relief:

Costs were awarded to Respondent and taxed against NOA Marine, Inc. in the amount of $18,892.01.

Pre-award interest of $3133.64 was awarded to NOA Marine, Inc.

Pre-award interest of $6232.68 was awarded to Respondent.

"The determination of the pre-award interest to be granted in favor of the vessel and its owner is somewhat more problematic.  The ruling is that Respondent is entitled to pre-award interest only on those items of damage awarded where Respondent has spent money to effect repairs and not on items where only an estimate for repairs has been prepared. While the evidence is not completely clear on the dates repairs were effected, the commencement date deemed appropriate by the arbitrator is July 1, 2007.  The damage items on which pre-award interest is granted to Respondent are:

Case No. 8:11-CV-63-T-17TGW

| | |
|---|---|
| Electrical | $35,447.93 |
| Flybridge hatch and seating | 11,856.00 |
| Interior carpentry | 4,035.00 |
| Miscellaneous carpentry | 8,683.43 |
| Total | $60,022.36 |

12.  Pursuant to the arbitration award, suit was filed in Pinellas County Circuit Court, Case No. 09-020461-C1, William Mahaffey and Tu Tu Much, LLC v. NOA Marine, Inc., in which an Order for Default Judgment was entered on July 15, 2010. The Order confirmed the arbitration awards of 7/28/2009 and 10/13/2009. The Order entered a final judgment for $135,116.65 in principal and post-arbitration interest of $6,116.98, for a total of $141,232.63 (sic).  The Order on Default Judgment states the total amount is "One Hundred Forty-One Thousand Two Hundred Thirty-Two Dollars and Twenty-one Cents ($141,232.63)." ($135,116.65 + $6,116.98 = $141,233.63.)

13.  Plaintiff issued Policy No. M3411474 to NOA Marine, Inc. for the period March 29, 2005 through March 28, 2006. The policy is a Marine General Liability Policy "MGL"), and includes the following Endorsements:

> Limited Pollution Buyback (01.07.04)
> Protection and Indemnity SP-23, amended (01.07.04), in respect of "trails and demonstrations"
> Ship Repairers Liability (01.07.04), Exclusion (iv) deleted
> Institute Radioactive Contamination, Chemical, Biological, Bio-Chemical, and Electromagnetic Weapons Exclusion Clause CL.370 (10.11.03)
> Institute Cyber Attack Exclusion Clause CL380
> U.S.A. & Canada Endorsement for the Institute Radioactive

9

Case No. 8:11-CV-63-T-17TGW

> Contamination, Chemical, Biological, Bio-Chemical and
> Electromagnetic Weapons Exclusion Clause (29.01.04)

The limits of liability are:

| | |
|---|---|
| Each occurrence | $1,000,000 |
| Products & Completed Operations Aggregate | $1,000,000 |
| General Aggregate (Other than Products and Completed Operations) | $2,000,000 |

There is a $5,000 deductible for each occurrence.

Part I is the Insuring Agreement for the Marine General Liability Policy, providing coverage for bodily injury and property damage, contractual liability, broad form property damage liability, fire legal liability- real property, personal injury and advertising injury liability, incidental emergency medical liability, host liquor law liability and additional coverages as specified:

## 1. BODILY INJURY AND PROPERTY DAMAGE

Underwriters will pay on behalf of the **Named Insured** all sums which the **Named Insured** shall become legally obligated to pay as compensatory damages because of

> **bodily injury,** or
> **property damage**

to which this insurance applies, caused by an **occurrence** which takes place within the policy territory....

## 2. CONTRACTUAL LIABILITY COVERAGE

Underwriters will pay on behalf of the **Named Insured** all sums which the

Case No. 8:11-CV-63-T-17TGW

**Named Insured** shall become legally obligated to pay as compensatory damages because of **bodily injury, or property damage**, liability for which the **Named Insured** has assumed in a contract or agreement that is an **incidental contract**, provided the **bodily injury or property damage** occurs subsequent to the execution of the contract or agreement, subject to the following:

A.  The definition of **incidental contract** set out in Part III is extended to include any written contract or written agreement arising out of or relating to the conduct of the **Named Insured's** business, but only with respect to operations performed by the **Named Insured** or to acts or omissions of the **Named Insured** in connection with the **Named Insured's** operations.

B.  The coverage does not apply to any direct claims asserted by the **Indemnitee** against the **Named Insured** for breach of the **incidental contract**, but is limited solely to claims for **bodily injury** and **property damage** asserted by a third party against the **Indemnitee** for which the **Named Insured** has agreed to indemnify the **Indemnitee** under the **incidental contract**.

....

3. <u>BROAD FORM PROPERTY DAMAGE LIABILITY COVERAGE</u>
   <u>(Including Completed Operations)</u>

The insurance for **property damage** liability applies, subject to the following additional provisions:

A.  Exclusions (12) and (14) set out in Part II are replaced by the following:

    1.  property owned or occupied by or rented to the **Named Insured**, or, except with respect to the use of "Elevators", to property held by the **Named Insured** for sale or entrusted to the **Named Insured** for storage or safekeeping;

    2.  except with respect to liability under a written sidetrack agreement or the use of "Elevators":

11

Case No. 8:11-CV-63-T-17TGW

> a. property while on premises owned by or rented to the **Named Insured** for the purpose of having operations performed on such property by or on behalf of the **Named Insured**;
>
> b. tools or equipment while being used by the **Named Insured** in performing his operations;
>
> c. property in the custody of the **Named Insured** which is to be installed, erected or used in construction by the **Named Insured;**
>
> d. that particular part of any property, not on premises owned by or rented to the **Named Insured**;
>
>> (I) upon which operations are being performed by or on behalf of the **Named Insured** at the time of the **property damage** arising out of such operations; or
>>
>> (ii) out of which any **property damage** arises; or
>>
>> (iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the **Named Insured**;

**B.** This Broad Form Property Damage Liability Coverage shall be excess insurance over any valid and collectible property insurance (including any deductible portion thereof) available to the **Named Insured**, such as, but not limited to, Fire, Extended Coverage, Builder's Risk Coverage or Installation Risk Coverage, and the Other Insurance provision in Section 16 of Part III of this policy is amended accordingly.

.....

Part II states the Exclusions to which Part I is subject:

12

Case No. 8:11-CV-63-T-17TGW

"The insurance provided under Part I is subject in all respects to the Exclusions set out in this Part II and the General Conditions set out in Part III here following:

**This Policy shall not apply to, specifically excludes, does not provide coverage for and will not pay, in whole or in part:**

**1.   any actual or anticipated claim for liability, loss, damage, costs, legal fees or expenses; and or**
**2.  any duty to defend a claim**

directly or indirectly caused by, arising out of, related to, or contributed to by, in connection with, or resulting from any one or more of the following exclusions.  For the purpose of this Part II, the term **Named Insured** shall include any **Additional Insureds** hereunder and any **Indemnitee** of the **Named Insured** whose liability has been assumed in accordance with Part I, Section 2 of this policy."

....

### 12.  INSURED'S WORK EXCLUSION

**property damage** to work performed by or on behalf of the **Named Insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; provided however, that this exclusion shall not apply to the extent that coverage is provided in an Endorsement to this policy.

### 13.  IMPAIRED OR NON-DAMAGED PROPERTY EXCLUSION
**property damage** to **impaired property** or property that has not been physically damaged, arising out of:

A.  a defect, deficiency, inadequacy or dangerous condition in the **Named Insured's products** or the **Named Insured's work**; or

B.  a delay or failure by the **Named Insured** or anyone acting on behalf of the **Named Insured** to perform a contract or agreement in accordance with its terms.

Case No. 8:11-CV-63-T-17TGW

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to the **Named Insured's products** or the **Named Insured's work** after it has been put to its intended use;

**14. INSURED'S PRODUCTS EXCLUSION**

**property damage** to the **Named Insured's products** arising out of such products, provided however, that this exclusion shall not apply to the extent that coverage is provided in an Endorsement to this policy.

.....

Part III states the General Conditions to which Part I is subject, including definitions:

"The insurance provided under Part I is subject in all respects to the Exclusions set out in Part II and the General Conditions set out in this Part III. For the purpose of this Part III, the term **Named Insured** shall include any **Additional Insureds** hereunder and any **Indemnitee** of the **Named Insured** whose liability has been assumed in accordance with Part I, Section 2 of this policy."

....

**22. DEFINITIONS**

When used in this policy (including endorsements forming a part hereof):
....

**completed operations hazard** includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. Operations includes materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

14